IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARY LOU MARQUEZ,

       Plaintiff,

v.                                                                                                        CIV 01-872 KBM

JO ANNE B. BARNHART,[1]
Commissioner of Social Security,

# **MEMORANDUM OPINION AND ORDER**

Among other things, Plaintiff suffers from asthma, anxiety disorder with panic attacks, depression, and possible fibromyalgia. She applied for benefits in January 29, 1997, alleging that she suffered from asthma since childhood and from panic attacks since approximately mid-1996. *See Administrative Record* ("*Record*") at 17-19, 53, 60, 93.

An Administrative Law Judge ("ALJ") found Plaintiff can perform unskilled light work with certain environmental restrictions. Based on the testimony of a vocational expert, the ALJ found Plaintiff could work as an office helper, shipping and receiving weigher, charge clerk and surveillance monitor, and therefore found her nondisabled at step five. On appeal, Plaintiff submitted additional evidence. *See id.* at 300-08. The Appeals Council considered the evidence but summarily affirmed, *see id.* at 6, 8, thereby making the ALJ's May 20, 1999 decision final for the purposes of this review under 42 U.S.C. § 405(g).

The matter is before the Court on Plaintiff's Motion to Reverse or Remand. *Doc. 9.*

---

[1] On November 9, 2001, Jo Anne B. Barnhart was sworn in as Commissioner of Social Security. In accordance with FED. R. CIV. P. 25(d)(1), Ms. Barnhart is substituted for Larry G. Massanari as the Defendant in this action.

Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73(b), the parties have consented to have me serve as the presiding judge and enter final judgment. Having carefully considered the entire record, I deny Plaintiff's motion and affirm the decision of the Commissioner.

## I. Standard of Review

If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and Plaintiff is not entitled to relief. *E.g., Hamilton v. Sec'y of Health & Human Servs.,* 961 F.2d 1495, 1497-1500 (10th Cir. 1992). My assessment is based on a review of the entire record, where I can neither reweigh the evidence nor substitute my judgment for that of the agency. *E.g., Casias v. Sec'y of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Castellano v. Sec'y of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1994) (internal quotations and citations omitted). "Evidence is insubstantial if it is overwhelmingly contradicted by other evidence." *O'Dell v. Shalala,* 44 F.3d 855, 858 (10th Cir. 1994) (citation omitted).

## II. Analysis

Plaintiff raises five interrelated arguments in her memorandum in support, several of which involve the opinions of one of her treating physicians, Dr. David Coultas. Plaintiff's medical records indicate that she has received medical attention from a number of doctors at the University of New Mexico Hospital and its Mental Health Science Center, and that for a time she was also treated by doctors at First Choice. It is unclear whether Dr. Coultas or any other doctor is her primary care physician. Nevertheless, he apparently is her primary treating physician for her asthmatic condition.

Dr. Coultas has written three versions of a "to whom it may concern" letter on Plaintiff's behalf, two of which were submitted for consideration by the ALJ. The first version consists of two letters, both of which were written before Plaintiff filed the instant claim and are dated October 25, 1994, and January 17, 1997, respectively. The letters are identical save for their dates:

> I have followed Mary Lou Marquez at the UNM Hospital Chest Clinic for asthma for many years. She is on regular medications to control her symptoms; however, she has been unable to work. Her impairment from asthma is permanent and I do not anticipate that her condition will change in the foreseeable future.

*Record* at 239 (1997 letter; time stamp shows this was received at OHA on September 16, 1997); *see also id.* at 287 (1994 letter); *id.* at 161 (4/16/97 visit to Dr. Coultas who notes at that point he has not seen Plaintiff for two years).

Dr. Coultas wrote a second one-sentence version on April 17, 1997 and it provides "Mary Lou Marquez is seen at UNMH for multiple medical problems and is unable to work. If you have any questions, call [telephone number]." *Id.* at 237 (and duplicate *id.* at 286).

He wrote the third version after the ALJ held the hearing and issued the decision, and it was submitted for Appeals Council consideration. *See Record* at 5, 304; *Doc. 10* at 6. It provides:

> Ms. Mary Lou Marquez is followed at UNM Hospital for multiple medical problems including asthma, obstructive sleep apnea, gastroesophageal reflux, and chronic pain. She is on multiple, regular medications to control symptoms. Because of her health problems she has permanent impairment and has been unable to work. I do not anticipate that her condition will change in the foreseeable future. If you have questions call [telephone number].

*Record* at 304.

Dr. Coultas also filled out two "Statement Of Ability To Do Work Related Activities" forms, one before the ALJ's hearing and decision and the other during the agency appeal. They are identical save for one limitation. Both forms indicate he is of the opinion Plaintiff can occasionally and frequently lift less than ten pounds, stand or walk less than two hours in eight-hour day, and must alternate sitting and standing. On the first form, her abilities to push and pull are unlimited; on the second form, Dr. Coultas found her limited in both her upper and lower extremities. The basis for all of these limitations is "by patient's report." Dr. Coultas further notes on both forms that Plaintiff's asthma "causes chronic shortness of breath with exertion." *Record* at 235 (duplicated at 288); *see also id.* at 306.

### A. *Controlling Weight To Dr. Coultas' Opinions*

In her first and third arguments Plaintiff argues that the ALJ erred in failing to give controlling weight to Dr. Coultas' opinions that Plaintiff cannot perform any type of work. In support of these arguments, counsel in the reply brief cites the Tenth Circuit decision in *Drapeau v. Massanari,* 255 F.3d 1211 (10th Cir. 2001).

I find that the ALJ properly disregarded the opinions stated in the letters because a treating physician's opinion that his patient is disabled is not dispositive. Whether Plaintiff is disabled is a decision that lies with the Commissioner. *Castellano,* 26 F.3d at 1029.

Moreover, to be given controlling weight, Dr. Coultas' opinions must be "well supported by clinical and laboratory diagnostic techniques ***and*** [cannot be] inconsistent with other substantial evidence in the record." *Castellano,* 26 F.3d at 1029 (emphasis added); *see also* 20 C.F.R. § 404.1527(d)(2). Contrary to counsel's arguments, a review of the record reveals that none of Dr. Coultas' or any other doctor's medical records support the asserted exertional

4

limitations. Indeed, Dr. Coultas explains that his assessments are not based on medical evidence but rather on the patient's own reports. As the ALJ discussed and the medical records indicate, Plaintiff's asthma is "stable," "mild," and "controlled" when Plaintiff uses her medications properly and that her lungs are clear.[2]

> The ALJ rejected Dr. Coultas' opinions because
>
>> the conclusions are not consistent with medical findings of record regarding the claimant's asthma which was described as mild and being stable. There also are only a few emergency room visits and total lack of hospitalizations related to the claimant's asthma. Second, the doctor completely based his findings on the statement of ability to do work related physical activity on the claimant's subjective reports of her symptoms, not his objective findings. He clearly noted that his findings were based on his "patient's report. . . ." Finally, based on the evidence of record, the doctor is not a vocational expert, and, therefore is not qualified to identify the physical and mental requirements for different jobs and the availability of jobs on the economy.

*Record* at 21-22.

The "degree to which the physician's opinion is supported by relevant evidence" and the "consistency between the opinion and the record as a whole" are the third and fourth criteria from *Goatcher v. United States Dep't of Health & Human Servs.,* 52 F.3d 288, 290 (10th Cir. 1995)

---

[2] *See Record* at 18 (ALJ's discussion and citations to record); *see also e.g., id.* at 149 (Plaintiff reports to one of her physicians that "[a]sthma seems under control to her"); *id.* at 150 ("lungs clear;" because Plaintiff unsure how to use inhaler, doctor surmises she is not using it regularly and asks her to bring inhalers for next visit), *id.* at 155 (assessed that Plaintiff's "asthma likely undertreated"), *id.* at 159 ("breath sounds coarse [with]= faint wheezes in bilat-bases"), *id.* at 161-62 (Dr. Coultas notes Plaintiff "[h]ere for [follow up of asthma. She hasn't been seen by me for [approximately] 2 years" and during that period Plaintiff reports having problems with panic attacks, hay fever and headaches; also notes "lungs: clear . . . asthma -- mild impairment, satisfactory control"), *id.* at 208 ("asthma (med controlled)"), *id.* at 236 (Dr. Coultas pulmonary results from 8/6/97), *id.* at 267-68 ("lungs clear . . . asthma – symptomatically stable") *id.* at 271 (prior history is "asthma [no] intubations]; *id.* at 274 ("asthma: doing well on current regime. lungs CTA").

that are quoted in *Drapeau.* Thus, here the ALJ cited a specific legitimate reason for not affording conclusive weight Dr. Coultas. *Goatcher,* 52 F.3d at 290; *see also e.g., Frey v. Bowen,* 816 F.2d 508, 513 (10th Cir. 1987) (opinion properly rejected if it is "brief, conclusory, and unsupported by medical evidence"). In contrast, the ALJ in *Drapeau* "did not consider **_any_** of these factors in disregarding the treating physician's opinion." 255 F.3d at 1213 (emphasis added). The ALJ's failure here to specifically cite *Goatcher* or discuss the weight he gave to each of the *Goatcher* factors do not warrant remand.³

---

³ The Tenth Circuit recently addressed this issue in an unpublished opinion, which is not attached because I quote and discuss the relevant portions in detail below. *Smith v. Barnhart,* 2002 WL 531534 (10th Cir. 4/4/02).

In *Smith,* the Tenth Circuit held that the ALJ properly discounted a treating physician's opinion under third and fourth *Goatcher* factors "because he found that the opinion was not supported by other medical evidence." As support for this holding, the *Smith* decision cited *Castellano,* 26 F.3d at 1029 and

> *Westbrook v. Massanari,* 26 Fed. Appx. 897, 900 (10th Cir. Feb. 8, 2002) (ALJ properly discounted treating physician's opinions because they were inconsistent with and not supported by objective medical evidence and they were made on forms for the claimant's disability insurance carrier); *Phillips v. Apfel,* 185 F.3d 875, 1999 WL 503049, at *2 (10th Cir. July 16, 1999) (ALJ properly discounted treating physician's opinions because they were not based on objective tests or other medical procedures)."

*Smith,* 2002 WL 531534 at *10.

The court there also noted that the

> ALJ did not specifically explain what weight (if any) he gave to the first, second and fifth factors outlined in *Goatcher,* but these factors do not undermine the ALJ's decision to give little weight to Dr. McKee's opinion. . . . [in footnote] to the extent the ALJ erred by not stating that he considered these factors, any such error was harmless. *See Bernal v. Bowen,* 851 F.2d 297, 302-03 (10th Cir. 1988) (no reversible error in ALJ's non-compliance with

6

In his reply, Plaintiff asserts that the limitations Dr. Coultas noted on the forms should be credited because another of her treating physicians executed a "Statement of Ability To Do Work Related Activities" for Appeals Council consideration. According to counsel, the "evaluation by Dr. [Mary] Carroll . . . significantly limited the claimant's ability or lift, stand, carry, walk, and use her upper and lower extremities due to her physical condition of fibromyalgia." *Doc. 12* at 3. The document itself belies this assertion.

First, whereas Dr. Coultas found every category of exertional limitation would preclude even sedentary work, Dr. Carroll, reports only one limitation and it pertains to light work. For example, Dr. Carroll finds Plaintiff can occasionally lift less than ten pounds, frequently lift ten pounds, and sit and stand/walk six out of eight hours. These findings are generally consistent with those of the nonexamining opinions, the position the ALJ adopted.

Also, there is no specific mention of fibromyalgia by Dr. Carroll. Her note next to the indication that Plaintiff is limited in upper extremities appears largely illegible, and says something about "trigger finger awaiting . . ." *Record* at 308. There are only two places in the medical records where fibromyalgia is discussed as a possible diagnosis and no medical records diagnose Plaintiff with the condition.

---

regulations and statute where claimant is not prejudiced); *see also Wilson v. Sullivan,* 930 F.2d 36, 1991 WL 35284, at *2 (10th Cir. Feb. 28, 1991) (where sufficient evidence is present to sustain ALJ's decision under correct standard, remand not necessary).

In an analogous situation, the Tenth Circuit has rejected a "formalistic, factor-by-factor" requirement in all circumstances. *See Qualls v. Apfel,* 206 F.3d 1368, 1972 (10th Cir. 2000) ("our opinion in *Kepler* [*v. Chater,* 68 F.3d 387 (10th Cir. 1995)] does not require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied.").

Finally, as with Dr. Coultas' limitations, the medical records do not support Dr. Caroll's other limitations: "asthma: worsened in hot weather if outside A/C room; Needs easy access to bathroom b/c incontinence." *Id.* at 308. Accordingly, because the same reasons for rejecting Dr. Coultas' limitations apply to Dr. Carroll's limitations, a remand would serve no purpose.

Plaintiff's fourth argument is that, based on the above limitations and the hypothetical question that subsumed them, the ALJ should have found Plaintiff unable to perform any work whatsoever. For the same reasons as above, I reject this argument. It is well settled that an ALJ is not required to accept as binding a hypothetical based on evidence unsupported by the record:

> [t]he hypothetical question should include all – and only – those impairments borne out by the evidentiary record. . . . The VE relied on the limitations found by the ALJ, which are reflected in the RFC assessment form. The ALJ was not required to accept the answer to a hypothetical question that included limitations claimed by plaintiff but not accepted by the ALJ as supported by the record. . . . We conclude the ALJ did not err in relying on the VE's testimony.

*Bean v. Chater,* 77 F.3d 1210, 1214 (10th Cir. 1995); *see also Decker v. Chater,* 86 F.3d 953, 955 (10th Cir. 1996); *Talley v. Sullivan,* 908 F.2d 585, 588 (10th Cir. 1990).

### B. Residual Functional Capacity Assessment

In her second and third arguments, Plaintiff maintains that the ALJ's decision cannot stand because he did not evaluate all of her impairments in combination nor did he engage in a discussion of each work-related item in assessing her residual functional capacity level. These arguments may be construed in two ways.

The first interpretation is a perceived error in the ALJ's analytical approach in his residual functional capacity assessment. That is, counsel apparently contends that the ALJ was required to

8

discuss each alleged impairment separately in light of every physical requirement of limited light work, and after doing so weigh the impairments together in light of every physical requirement. *See Doc. 10* at 8, 10-11. As the authorities in footnote 3 illustrate, the Tenth Circuit holds that the type of formalistic narrative discussion counsel urges here is unnecessary. Even so, I find that the ALJ's decision did discuss Plaintiff's impairments in detail and in combination, and considered them in the context of his residual functional capacity evaluation. *See Record* at 19-22.

The second way to construe the argument is that the ALJ was required to discuss the interrelationship between Plaintiff's conditions and her medications in assessing her residual functional capacity. For example, Plaintiff sometimes describes her panic attack symptoms or chest pain from gastrointestinal problems as asthma-like shortness of breath. Other medical records show that Plaintiff experienced panic and joint pain when withdrawing from taking a "prednisone taper" for her asthma or from taking her Valium. Others indicate that when Plaintiff's mental health providers began prescribing her medications, she had negative experiences with side effects.

The ALJ did not wholly ignore these interrelationships. He did observe that after trying several medications for her mental impairments, Plaintiff "reported side effects to most and discontinued them. . . . Most recently Alpraxolam has helped" and that in "1997 the claimant was experiencing some depression and was emotionally liable (sic), but this was related at least in part to being tapered of prednisone. . . . [a]fter she was off steroids and on the psychotropic medications prescribed, the claimant reported a decrease in panic episodes and other symptoms." *Record* at 19. Further, as the ALJ also discussed and the medical records indicate, Plaintiff's

9

mental and gastrointestinal impairments, like her asthma, are controlled by medication.[4]

Because the record supports the ALJ's conclusion that all of Plaintiff's conditions are controlled, I find that the ALJ did not err in discussing them in any more detail than he does in his opinion. To remand under these circumstances would be an empty exercise. *See Senne v. Apfel,* 198 F.3d 1065, 1067 (8th Cir. 1999) ("We have consistently held that a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case."); *Mays v. Bowen,* 837 F. 2d 1362, 1364 (5th Cir. 1988) (same).

### *C. Credibility Determination*

In assessing residual functional capacity, the ALJ found Plaintiff less than credible. Plaintiff asserts error by the ALJ in commenting that Plaintiff was not gasping during the hearing as she claimed in her stated testimony. True, the "Tenth Circuit has stated consistently that an ALJ may not base a credibility finding simply upon his or her observation." *Doc. 10* at 13. The operative word is "simply," because it is not erroneous for an ALJ to use personal observations as one of their considerations in evaluating credibility:

> Although an ALJ may not rely solely on his personal observations

---

[4] *See Record* at 19, 20 (ALJ discussion and medical records cited therein); *see also e.g. id.* at 163 ("depression/anxiety -- helped by current meds"); *id.* at 200 ("severity of illness – mildly ill"); *id.* at 201 ("mild w/d symptoms"); *id.* at 202 ("affect: mildly anxious"); *id.* at 203 (Plaintiff reported sleeping better with medications but that her boyfriend "is severely stressing her by being possessive, paranoid, controlling;" severity of illness – "moderately ill"); *id.* at 204 (panic symptoms worsened "after multiple break ins and recently, 2 wks ago, sister-in-law was killed in MVO;" severity of illness – "moderately ill;" medication providing some relief); *id.* at 234 ("to whom it may concern" letter from A. Del Fabro that does not indicate severity or limitations and states Plaintiff is on medication for anxiety and panic attacks, has been referred for behavioral therapy, and her "prognosis is guarded at the moment but we expect some improvement in function with the combination of medication and psychotherapy").

10

> to discredit a plaintiff's allegations, he may consider his personal observations in his overall evaluation of the claimant's credibility. *See Teter v. Heckler,* 775 F.2d 1104, 1106 (10th Cir.1985) (holding that where other evidence corroborates claimant's pain as genuine, ALJ may not reject claimant's allegations solely on basis of his demeanor); *SSR 96-7p,* 1996 WL 374186, at *8 (S.S.A.) (stating that ALJ may not accept or reject claimant's allegations based solely on ALJ's personal observation of claimant, but ALJ should consider personal observations in overall evaluation of claimant's credibility).

*Qualls v. Apfel,* 206 F.3d 1368, 1373 (10th Cir. 2000).

Just as the *Qualls* decision concluded, here the "ALJ properly considered his personal observations of plaintiff as part of his overall assessment of plaintiff's credibility." *Id.* In its entirety and context, the ALJ's reasoning was:

> The claimant's testimony of subjective complaints and functional limitations , was not supported by the evidence as a whole in the disabling degree alleged and therefore lacked credibility. She reported pain in her whole body, shortness of breath, inability to be around people and memory problems (Exs. B-1E and B0-2E).
>
> The claimant has acted less than fully credible throughout this proceeding. She was extremely vague regarding her past work activity in reports to the Administration, claiming she has serious memory problems (Ex. B-7E/15). However on questioning at hearing she admitted she had worked in the recent past. Consistent with work activity are the earnings of over $2,000.00 a year reported to Social Security in 1986, 1988, 1989 and 1995 (Ex. B-3D/3-4). The claimant also was a less than fully credible witness at the hearing. She continually answered she could not remember information requested at the hearing. She also testified that she was constantly gasping for breath. However I did not observe the claimant gasping at hearing. In addition, she testified she was only able to sit all day, did not go out, did not read, but did watch television and listened to the radio. However, he brother testified that she cleaned, cooked, drove and visited her parent often. **The claimant also was uncooperative with the Administration in undergoing a psychiatric consultative evaluation. She failed to appear for scheduled appointments.** Finally, the claimant reports

11

> she had constant aches and pains, but on the form completed for the Administration regarding her medication in October 1997 she failed to list any prescribed or over the counter medication that she took for pain (Ex. B-13E). Based on my review of the record and observations of the claimant at hearing I find that the claimant was *less than fully credible in describing the type and extent of her symptoms and functional limitations.*

*Record* at 21 (emphasis original).

Plaintiff argues that lay witnesses offered testimony and affidavits to corroborate Plaintiff's testimony that her asthma is severely limiting. *See Doc. 10* at 13; *Doc. 12* at 8-10. Plaintiff's brother, Gene Marquez, was the only person who testified at the hearing before the ALJ. Since the ALJ is "the individual optimally positioned to observe and assess witness credibility," his determinations are entitled to deference. *Casias v. Secretary of Health & Human Servs.,* 933 F.2d 799, 801 (10th Cir. 1991); *see also e.g., Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir.1995). Mr. Marquez did testify that Plaintiff "constantly" complains of being unable to breathe, is unhappy and cries often, and he is concerned about her. However, as the ALJ noted via his opinion and asking clarifying questions during the hearing, *Record* at 339-40, Mr. Marquez's testimony contradicted Plaintiff's with regard to her ability to care for herself and her home.

Plaintiff cites as further lay support the statements of her friend and daughter, but these were only submitted for Appeals Council consideration. *See Record* at 300-03. The Appeals Council opinion states that it considered this evidence, but it plainly was not required to do so. The daughter's statement was cumulative, and the friend's statement dealt with an attempt by

Plaintiff to work after the ALJ's decision.[5] In any event, I find that a remand would be futile to allow the ALJ to consider the evidence himself.

Plaintiff's final two challenges to the ALJ's credibility assessment are that: (1) the ALJ's assertion that Plaintiff was vague about her work history was unfounded because the last time Plaintiff worked was three years before the hearing and by that time her "asthmatic and mental condition had deteriorated," *Doc. 10* at 13; and (2) the ALJ failed to "identify any document or evidence in the record" showing that she failed to undergo a scheduled consultative evaluation or was uncooperative, *id.* Even if these assertions are correct,[6] the ALJ nonetheless articulated a number of other legitimate reasons for concluding that Plaintiff's testimony about her limitations

---

[5] The Tenth Circuit discussed this point in a relatively recent unpublished opinion.

> Pursuant to 20 C.F.R. § 404.970(b), the Appeals Council is required to consider evidence submitted with a request for review 'if the additional evidence is (a) new, (b) material, and (c) relate[d] to the period on or before the date of the ALJ's decision.' *Box v. Shalala,* 52 F.3d 168, 171 (8th Cir. 1995) (internal quotation omitted); *see also O'Dell,* 44 F.3d at 858. . . . Evidence is new within the meaning of § 404.970(b) "if it is not duplicative or cumulative," and it is material "if there is a reasonable possibility that [it] would have changed the outcome." *Wilkins v. Secretary, Dep't of Health & Human Servs.,* 953 F.2d 93, 96 (4th Cir. 1991). To be chronologically pertinent, "the proffered evidence [must] relate to the time period for which the benefits were denied." *Hargis v. Sullivan,* 945 F.2d 1482, 1493 (10th Cir.1991).

*Boone v. Apfel,* 189 F.3d 477, 1999 WL 668253 (10th Cir. 1999).

[6] Having reviewed the record in detail, I find no reference to a consultative examination. Defendant in fact concedes that there is no evidence supporting the conclusion that Plaintiff was uncooperative in participating in a psychiatric consultative evaluation. *Doc. 11* at 9, n.2. I also cannot tell from the opinion whether the second sentence noting Plaintiff's failure to appear for scheduled appointments refers to the purported consultative examination or to the ALJ's prior conclusion that Plaintiff missed "numerous" appointments at the University of New Mexico Mental Health clinic. *See Record* at 19. Plaintiff does not challenge the ALJ's prior conclusion that there were "numerous" visits missed and the ALJ does not cite any specific portion of the record in support of the conclusion that Plaintiff missed visits. My review of the medical records shows Plaintiff missed one appointment with First Choice. *Record* at 151.

was less than credible.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's Motion To Reverse/Remand *(Doc. 9)* is denied, the decision of the Commissioner is affirmed, and a final order enter concurrently herewith.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by consent.